### :No. 8684.

### FELIX BELLOCQ ET AL. VS. P. G. GIBERT ET ALS.

Where the payment of the price of immovable property is resisted on the ground that the vendor was not the sole owner, but that another party had an interest in it, and the vendor agrees that, if this other party will renounce in his favor, he shall share the price with him when collected, such agreement can be proved by parol and if proved should be enforced.

Nor will the disclaimer made of title in the act of renunciation estop the party from recovery under the agreement or be used to show that the party had no interest and that the agreement was a *nudum pactum*.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*Blanc & Butler* for Plaintiffs and Appellees.

*Albert Voorhies* for Defendants and Appellants.

The opinion of the Court was delivered by

TODD, J. The plaintiffs sue to recover of the defendant, P. G. Gibert, as tutor of the minor children of his deceased wife, Charlotte Coralie Bellocq—and in said capacity representing her succession—and of him personally, the sums stated in the petition, being the proceeds or price in part of " certain immovable" property, situated in the village of Mandeville, parish of St. Tammany. They allege, in substance, that the said Charlotte Coralie Bellocq and her said husband, Gibert, made a verbal agreement to pay them a certain amount out of the price of said property, which she, Mrs. Gibert, had sold, and the payment of which was being resisted, if they, the plaintiffs, would make a renunciation in her favor of any rights they, the plaintiffs, might have to the property. That they made the renunciation in question, but that when the price of the property was collected by Gibert, after the death of his wife, he refused to pay them the amounts promised or any part thereof.

The defendant filed a number of exceptions to the petition, which were overruled, and we think properly, as they denied a plain cause of action and set up matters entirely foreign to the substance and merits of the demand.

The defendant answered by a general denial, specially denied the agreement alleged and made a reconventional demand for an amount larger than that claimed by plaintiffs.

From a judgment in favor of the plaintiffs against him, as tutor, for the sum claimed and dismissing the reconventional demand, the defendant has appealed.

As the defendants' counsel is silent in his brief and argument before this Court with respect to the action of the lower court on the reconventional demand, it may be considered as eliminated from the controversy, leaving alone to be considered the issue raised by the pleadings touching plaintiffs' demand.

The facts bearing on the litigation, are substantially these:

The plaintiffs—Felix, Paul and Marie Bellocq, and Charlotte Coralie Bellocq (Mrs. Gibert), were brothers and sisters, children of the late Jean B. Bellocq and his wife Odile Derbes, to whom the Mandeville property mentioned in the pleadings belonged in community at the time of their death.

Jean Bellocq died in 1856. His widow, in 1860, conveyed the property to her daughter Charlotte by private sale. In 1866, Charlotte Bellocq, then the wife of the defendant Gibert, sold the property to one Charpaux, under the condition that the purchaser could withhold the price until certain incumbrances on the property were removed, and a clear title could be given.

The next year Charpaux sold to one Vallette on the same terms.

In 1872, Charpaux, for the use of Vallette, brought suit against Mrs. Gibert and husband to annul the sale in question on the ground—among others—that Mrs. Gibert was not the sole owner of the property and that it had belonged to the community between Jean B. Bellocq and his wife, and the rights of the other heirs of said Bellocq thereto had never been divested.

Mrs. Gibert and her husband were represented in said action of nullity by Fergus Fuselier, Esq., an attorney at law, who, about the time the suit was instituted, wrote and sent to Paul Bellocq, one of the plaintiffs in the instant suit, the following communication which we transcribe in full:

"NEW ORLEANS, March 22d, 1872.

" Mon Cher Paul:

" J'ai vu Gibert et causé avec lui de l'affaire en question. Il est parfaitement convenu que le prix de la vente faite a Mr. Charpaux sera également divisé entre les parties interressées, si on parvient a le faire payer, chose dont je ne doute pas si toutes les parties fournissent une ratification.

" Vois les héritiers et je passerai au magazin ce soir, prendre la reponse, afin de faire, desuite, ce qui sera nécessaire.

" Tout a toi,

" FERGUS FUSELIER."

Upon receipt of this note Paul Bellocq communicated with his co-heirs referred to—and his co-plaintiffs herein and getting their consent to the proposition contained in the note, reported this fact to Mrs. Gibert and husband, who, thereupon, agreed to pay to the plaintiffs, in equal shares with Mrs. Gibert, the price for which the property had been sold by her, so soon as the same was collected from the purchaser.

The proposed ratification was then made by the plaintiffs in a formal act passed before a notary and in terms full and complete.

The action of nullity brought by Charpaux, referred to, was pending for several years, and was finally brought by appeal to this Court and was therein finally decided in favor of Mrs. Gibert, on the 10th February, 1879. By reference to the opinion in the case it will appear that Mrs. Gibert's success in defeating the action resulted mainly, we might say entirely, from the effect of the ratification in question.

After the determination of this suit the plaintiffs, doubtless, with a view to assist in the collection of the price and to meet any possible objection of the purchaser of the property, just prior to the institution of a suit for the recovery of the price, confirmed their previous ratification by what is termed a quit claim deed.

In 1879 this suit for the price was brought against Charpaux by Gibert, as tutor of the minor children of his wife—who had in the mean time died—and terminated in a judgment in his favor, upon which the money, was realized in June, 1881—amounting, after deducting all expenses, to $3028 40.

Under the alleged agreement the plaintiffs—each of them—would be entitled to one-fourth of said amount ($757 10), as claimed in this suit. The defendant repudiated or denied the agreement and refused to pay the money and the pivotal question in the case is that touching the

existence of the agreement in question and its legal effect if there ever was one.

In the foregoing statement we have made mention of this agreement as a fact proved, for the evidence on this point—which we have carefully examined—leaves no doubt on our minds that it was made, and that it was fully understood by the parties during the many years that the litigation was pending touching the property and for the recovery of the price of it. It became, as it were, a settled family matter often referred to and discussed.·

The chief contention in the case, however, made by the defendant's counsel, is that this alleged agreement was but a verbal one, and that parol evidence to prove it was improperly admitted; and to the admission of such testimony bills of exception were taken, to be found in the record.

The objection was, substantially, to the effect that the agreement related to rights in or to immovable property, and should have been in writing, and besides, that the evidence offered sought to contradict the written act of ratification or renunciation of the plaintiffs, in which, title to the property had been disclaimed by them.

We think, after mature reflection, that the objection was wholly inapplicable to the character of the demand and the issues and the facts of the case, and that, therefore, it was properly overruled.

The plaintiffs in this suit are not asserting any title to immovable property or any real right thereon. There is no such issue raised by the pleadings. It is simply an action to recover a sum of money under a verbal promise to pay it. The testimony objected to, related solely to this promise and was not offered or designed to establish any interest in or right to immovable property. In truth, the agreement was directly predicated on the fact assumed or acknowledged by all parties thereto, that the plaintiffs had an interest in the immovable referred to. That immovable, or the rights of the plaintiffs thereto or thereon, did not, therefore, form the object of the agreement. Its sole purpose was to ensure the collection of the price of the property—which one of the parties had sold—and which none of them wished or sought to recover. The consideration and the sole consideration which was to entitle the plaintiffs to share in that price was that they should do a certain act, and that was to renounce in favor of one of the parties—Mrs. Gibert— any and all interest in the immovable, which was deemed essential to her success in the pending suit and as ensuring the realization of the price.

The plaintiffs paid the stipulated consideration, they executed the promised act of ratification and renunciation, and so far as that act is full and sweeping in its language and disclaims all right and title to the property in plaintiffs, and acknowledges Mrs. Gibert as the true owner, to the same extent should it be regarded as the complete and strict fulfillment by the plaintiffs of their part of the agreement—the entire and literal payment of the consideration—and as conclusive proof of such payment, instead of being used as evidence of a want of right in plaintiffs to make the agreement and to recover under it by reason of their necessary disclaimer of title to the property. The renunciation they agreed to make, and did make, would have amounted to nothing without such disclaimers. They were intended to operate in favor of Mrs. Gibert and against her adversary in the contemplated or pending suits, and had to be shaped and formulated to such end. And instead of being opposed to plaintiffs' claims in this action, it should be pointed at as the very best evidence of the payment of the consideration or the fulfillment of the condition of their contract, upon which alone they could be entitled to recover the amount claimed.

The contention of the defendants' counsel amounts practically to this :

That a party seeking to recover the price of property, finds himself in danger of losing his suit by the assertion on the part of the buyer, that he, the seller, was not the owner or sole owner of the property when conveyed, but that it belongs in whole or in part to another, that to remove the danger and insure his success in the suit, he induces that other person to renounce in his favor, in consideration of sharing the price of the property with him when collected ; and when the renunciation is made and its purpose accomplished, and the money in hand, and the party renouncing asks for his share, his renunciation can be held up to him and he be told that it furnishes an absolute bar and estoppel of his claim to share in the price of the property. That his disclaimer of title is fatal to such right.

We do not think such contention is well founded, and whether the property was movable or immovable, it would not affect the question of the admissibility of evidence to prove the agreement which led to the renunciation and the impossibility of turning the language of the renunciation to defeat the agreement.

If this was an action on the part of the plaintiffs to recover their father's community interest or the interest inherited by them from him in the property, against the purchaser or its present owner, under the

title derived from Mrs. Gibert, their sister, in such case their claim could be successfully met and their pretensions forever barred by their renunciation in question and the disclaimer therein contained. The rule invoked and the objection urged by the defendants would, in the supposed case, be strictly applicable and their effect irresistible; but they find no place in the present instance and under the real facts and issues of this case.

The letter of the attorney was also properly admitted as leading up to the agreement and in corroboration of it.

The other documentary evidence offered may be regarded in the same light, and as in fact affording legal proof, that at the time the agreement was entered into and the renunciation made, the plaintiffs had a substantial and real interest in the property by inheritance from their father.

Nor in view of this fact and other circumstances of the case presented, can the agreement, in whatever light we regard it, be held a *nudum pactum*, as contended by the defendants' counsel.

The counsel has also suggested that at the time the agreement was made, Mrs. Bellocq and another son of hers were then living, and was subsequently died, and that the amount or amounts that plaintiffs would be entitled, in any event, to recover would be affected by said fact. We cannot discover the force of this suggestion. Louis Bellocq died before his mother; his interest, under the agreement in question, passed to his mother and his brothers and sisters, and upon Mrs. Bellocq's death, the interest thus inherited by her, passed equally to her four children, the plaintiffs and Mrs. Gibert. If the sale of Mrs. Bellocq to her daughter, Mrs. Gibert, was simulated, and in point of fact she retained to her death her community interest in the property, when that event happened, such interest passed to her children alike.

If the sale to Mrs. Gibert was real, still her agreement to share equally with the other heirs, was, under the circumstances of that agreement, binding on her, although in point of fact she might have had when she sold the property, the largest interest in it.

For these reasons, the judgment of the lower court is affirmed with costs.

<hr />

### DISSENTING OPINION.

BERMUDEZ, C. J.   The relationship between the parties, their heirship, as the issue of the same authors, are matters entirely foreign to this litigation.

The claim avowedly rests exclusively upon the agreement declared upon and which is said to have been entered into previous to the confection and signature of the act of ratificatification of the sale of the real estate in question.

The plaintiffs should recover in the event only that the agreement was legally proved.

They claim that it is established by :

1. A letter from the attorney-at-law, who, at the time represented Mrs. Gibert in the suit for the price, brought against the purchasers of the property.

2. The act of ratification signed by the plaintiffs and used by Mrs. Gibert.

3. Oral testimony.

It does not strike me that an attorney-at-law who institutes a suit in the name of a vendor against a vendee, to recover the price of sale, has any legal authority on that account to offer to outstanding parties whose intervention, in the shape of a ratification is necessary for recovery, a participation in the proceeds when realized. Even then, the letter does not purport to have been authorized by the plaintiffs in the suit, but simply by her husband.

There is no evidence to show, except the *ipse dixit*, that the attorney was empowered even to that extent. It is after all at best, nothing but a beginning of proof.

The act of ratification emphatically repels the idea of the existence of the alleged agreement, which if it ever was entered into, must have preceded the confirmation.

This act unequivocally declares, that the plaintiffs acknowledge that they had no right, title or interest to the property conveyed by their mother to their sister and by the latter to her vendee.

The oral testimony offered to prove the *consideration* of the ratification was improperly received. It was designed to establish a state of facts anterior to the drawing up and signature of the act of renunciation and antagonistical to its recital; namely, that, being owners, the plaintiffs had agreed themselves not to be such, therefore, to tell a falsehood, with the understanding that the proceeds would be equally distributed between them and their sister.

It is elementary that parol evidence is inadmissible against or beyond what is mentioned in a written act, or what may have been said before or at the time of making it, or since.

The familiar articles of the Code read :

"The authentic act is full proof of the agreement contained in it against the contracting parties and the heirs and assigns, unless it be declared and proved a forgery.

"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before or at the time of making them." R. C. C. 2233 and 2276.

The authorities expounding these texts are innumerable and inflexibly forbid oral testimony in a case like the present one.

The claim in this case is for the price, in consideration of which the plaintiffs admitted they had no claim to the property, or of which they renounced or transferred that claim. The effort is to prove the contract by parol or oral testimony. Could such testimony be admissible to prove the price of sale of real estate? Unquestionably not. Why then should it be received in a parallel, if not identical case?

The inhibition is *absolute* between the parties, when the act relates to real estate. Conversations, considerations and conclusions anterior to the contract are presumed to be embodied in the act.

The unbending rule of our jurisprudence is that a party cannot vary, explain, impeach or destroy his voluntary written acknowledgment, unless after alleging fraud, error, or the like. This is inflexibly the case, where the meaning and purport of the act is the subject matter under consideration; when the suit is to enforce a right alleged to arise in consequence of it; where the oral testimony is palpably offered to inject therein, or extract therefrom, matters which were included and embodied therein; where the object is to restrict or enlarge, cripple or aid, subvert or support the act and where the rights of minors are at stake and imperilled.

In such case, the only evidence which the law allows is a counter letter; none has been produced in this instance.

In the absence of legal proof in support of the agreement, which is the only foundation on which this suit rests, the plaintiffs should not recover.

I, therefore, dissent from the opinion and decree.

Rehearing refused.